# Richmond

SYDNOR, HOWEY & COMPANY, INC. v. J. M. SYDNOR.

April 10, 1939.

Record No. 2036.

Present, All the Justices.

The opinion states the case.

*M. J. Fulton* and *J. M. Turner,* for the plaintiff in error.

*R. Carter Scott, Jr.,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

For some time prior to the year 1937, J. M. Sydnor had been the owner of eight shares of the stock of Sydnor, Howey & Company, Inc., a Virginia corporation engaged in the fuel and building material business in the city of Richmond. Sydnor became dissatisfied with the conduct and management of the business, and on January 13, 1937, through his attorneys, wrote the corporation suggesting that an audit be made of its affairs.

This audit was completed and shortly thereafter, on July 14th, Sydnor's attorneys wrote the corporation that their client desired either that his stock be purchased by "the present management" or that the corporation be liquidated. The corporation replied suggesting that Sydnor submit an offer of the price at which he was willing to sell.

On July 26th Sydnor's attorneys wrote the corporation that Sydnor had authorized them to state that he was "willing to transfer his stock and dispose of all his interest in the corporation for the sum of $10,000," and that upon acceptance of this offer Sydnor would deliver the stock, properly endorsed, and thereafter would be no longer interested in the corporation or its future management.

The corporation countered with an offer to pay $6,400 for the stock. To this counter-offer Sydnor's attorneys replied, on August 2nd, that he would "transfer his stock to you or your nominee for the net sum of $8,000," and that they had advised him to sell at that price "with the expectation of an early settlement and the avoidance of litigation."

In a letter dated August 6th the corporation refused to pay $8,000, but offered $7,200 for the stock. To this Sydnor's attorneys replied, on August 24th, that unless their client obtained the sum of "$8,000 net cash for his stock," he would take his chances on a liquidation of the corporation.

The corporation replied, in a letter dated August 27th, that it had "decided to take over Mr. Sydnor's eight shares of stock at $1,000 a share," and, further, that "On or before October 1, Sydnor, Howey & Co., Inc., will settle with Mr. Sydnor, or you as his attorneys for the stock duly transferred to the corporation on the above basis."

On August 31st Sydnor's attorneys wrote the corporation as follows:

"We acknowledge receipt of your letter of August 27, 1937, from which we understand that Sydnor, Howey & Co., Inc., agrees to purchase Mr. J. M. Sydnor's interest in the corporation for the sum of $8,000, net, to Mr. Sydnor.

"We believe it will be mutually advantageous for the transaction to be completed at as early a date as practicable, and that the corporation will not find it necessary to delay a settlement until October 1st.

"If you will kindly advise us when you are prepared to settle, the shares of stock evidencing Mr. Sydnor's interest in the corporation, properly endorsed, will be delivered to the corporation.

"Upon the payment to Mr. Sydnor, or to us as his attorneys, of the sum of $8,000, net, Mr. Sydnor will cease to have any interest in, or claim upon, Sydnor, Howey & Co., Inc., and conversely, Sydnor, Howey & Co., Inc., will cease to have any interest in, or claim upon, Mr. Sydnor.

"In other words, the payment by Sydnor, Howey & Co., Inc., to Mr. J. M. Sydnor of the sum of $8,000, net, will constitute a final settlement of all interests and claims, fixed or contingent, between Sydnor, Howey & Co., Inc., and Mr. J. M. Sydnor."

The corporation replied under date of September 4th as follows:

"This is to acknowledge receipt of your letter confirming the sale of Sydnor stock of the Sydnor, Howey & Co., Inc., to this corporation at the price of $8,000.

"As we wrote you previously, we will be prepared to settle on this basis on or before October 1, and it is probable our arrangements can be made so that we can settle within a short time.

"In any event we will settle for the stock within the time fixed."

On September 27th the corporation wrote Sydnor's attorneys that it was prepared to settle the transaction on September 29th by the payment of the sum of $8,000 in cash, "less a note the company holds against Mr. J. M. Sydnor drawn March 18, 1935, payable sixty (60) days after date for $608.70," which, with accrued interest, amounted to $695.

Sydnor's attorneys promptly replied declining to settle on this basis and calling attention to the fact that their

client's offer was to accept "$8,000 net cash," which meant, as they said, that the amount of the note was not to be deducted from the price of the stock; that in order to make sure that the contract would not be misinterpreted, they had expressly stated in their letter of August 31st that upon the payment to Sydnor "of the sum of $8,000, net, Mr. Sydnor will cease to have any interest in, or claim upon, Sydnor, Howey & Co., Inc., and, conversely, Sydnor, Howey & Co., Inc., will cease to have any interest in, or claim upon, Mr. Sydnor;" and that accordingly the note should be canceled and returned to Sydnor.

On October 1st the corporation wrote Sydnor's attorneys denying that the proper interpretation of the contract for the sale and purchase of the stock contemplated a cancellation of the note.

Subsequently there were exchanged between the parties several letters in which each stoutly maintained his or its position as to the meaning of the contract.

Finally, after it had become apparent that litigation would be necessary to settle the controversy, it was stipulated that the corporation would pay to Sydnor the sum of $8,000, and in consideration thereof the stock would be delivered to it, without prejudice to the rights of the parties, leaving for determination only the question as to whether the note should be canceled. This agreement was carried out.

Thereafter, in a declaratory judgment proceeding, the trial court entered a judgment upholding the contention of Sydnor that as a part of the contract for the sale and purchase of the stock, the parties had agreed to "a final settlement of all interests and claims, fixed or contingent, between" them, that there was no longer any liability upon Sydnor on the said note, and that, therefore, it should be returned to him. From this judgment Sydnor, Howey & Company, Inc., has appealed.

The contention of the corporation is that Sydnor's offer of August 24th to sell his stock for "$8,000 net cash" was accepted by its letter of August 27th, that the contract then became final, and that Sydnor's letter of August 31st,

wherein he said that the sale and purchase of the stock would constitute a final settlement of all claims between him and the corporation, was an effort to inject into the contract an additional provision not theretofore within the contemplation of the parties.

Sydnor's contention is twofold:

(1) That when the parties agreed on a sale and purchase of the stock for the price of "$8,000 net cash" this meant that the seller was to receive the amount specified, "clear of anything extraneous," and without any deduction for any liability whatsoever of his to the corporation. Hence, he says, the last paragraph of his letter of August 31st was merely a correct interpretation of the contract and not an addition thereto.

(2) That if the position just stated is incorrect, then the minds of the parties did not actually meet and the contract did not become fixed until the corporation in its letter of September 4th accepted his proposition of August 31st that that sale and purchase of the stock would constitute a final settlement of all matters between him and the corporation, including the note in question.

We think that neither contention of Sydnor is correct and that the trial court's interpretation of the contract was erroneous.

The correspondence clearly shows that from the very inception of the negotiations the eight shares of stock owned by Sydnor was the only matter which concerned the parties. Sydnor was a minority stockholder in the corporation and was not satisfied with the conduct of its affairs. He determined to get out. This he could accomplish only by a sale of his stock. All of the correspondence down to Sydnor's letter of August 31st dealt with the stock alone. There is not the slightest suggestion in any of the letters up to this time that either party had in mind Sydnor's note due to the corporation. Nor is there any suggestion that they contemplated settling any of their mutual liabilities other than the stock liability of the corporation to Sydnor.

Sydnor first asked $10,000 for his stock and the corporation countered with an offer of $6,400. Sydnor then offered to take $8,000 and the corporation offered $7,200. Sydnor replied stating that his offer to sell for $8,000 was final and this offer the corporation accepted. During all of these negotiations not a line was written or a word said as to the settlement of any other claim which either party might have against the other.

■ We can not agree with the argument that the term "$8,000 net cash" contemplated that Sydnor's note to the purchaser of the stock would be canceled. In his letter of August 2nd, Sydnor wrote the corporation that he would transfer his stock "to you or your nominee for the net sum of $8,000." If the stock had been sold to the corporation's nominee, a third party, did this mean that Sydnor would be entirely relieved of any and all debts which he might have owed that nominee as the purchaser of the stock? If the nominee instead of the corporation had purchased the stock, what, then, would have become of Sydnor's liability to the corporation? The answer is, of course, that neither of these liabilities would have been affected, because the term "$8,000 net cash" meant that Sydnor was to receive this sum without any deduction for commissions, transfer tax, charges or expenses of any character arising out of the sale and transfer of this stock. It was not intended to affect other liabilities which existed between the seller and purchaser of the stock.

We think that a fair and correct interpretation of the correspondence is that Sydnor offered to sell his stock to the corporation for the sum of $8,000, and it agreed to buy at this figure, and that the transaction was to have been closed on October 1st, which was entirely satisfactory to both parties.

It follows, therefore, that Sydnor placed an erroneous interpretation upon the contract when he wrote the corporation, on August 31st, that a consummation of a sale of the stock would terminate all other existing liabilities between him and the corporation.

Nor do we think that there is any merit in Sydnor's second contention that the contract between the parties was not closed until the corporation's letter of September 4th, and that thereby the corporation agreed to his proposition of August 31st that the sale and purchase of the stock would constitute a final settlement of all outstanding liabilities between them.

In the first place, this position is entirely inconsistent with his first and main contention, namely, that his letter of August 31st was merely a correct interpretation of the contract already entered into and not an addition thereto. It is elementary that a litigant may not assume inconsistent positions in a suit.

Moreover, it is perfectly clear that Sydnor's letter of August 31st was not intended as an injection into the contract of a new provision. Both his subsequent letters and his pleadings in the lower court show that this letter was written merely as Sydnor's interpretation of the contract, which he admitted had already become fixed and final.

We have this situation: In his letter of August 24th Sydnor made a final offer to sell his stock to the corporation for the price of "$8,000 net cash." On August 27th the corporation agreed to these figures, but suggested that it would like to settle the transaction on October 1st. This date of settlement Sydnor agreed to in his letter of August 31st. The minds of the parties had then met and the contract became final and was actually performed. Sydnor's statement of his interpretation of the contract in the last paragraph of his letter of August 31st, of course, contributed nothing to the agreement. It was merely his expression of opinion as to what he thought the contract meant, and with this interpretation we can not agree.

The judgment of the lower court will be reversed, and this court will enter a final judgment that the contract entered into between the parties does not relieve J. M. Sydnor of any liability on the note of $608.70 held by the corporation.

*Reversed and final judgment.*